Good morning, your honors. May it please the court, my name is Sarah Kunstler and I represent the appellant John Hotaling. The government breached its plea agreement with my client by advocating for a guidelines calculation that was 11 levels higher than what it stipulated to. As a remedy for this breach, Mr. Hotaling seeks specific performance with resentencing before a different district court. If no breach is found, we ask this court to find the plea agreement void as unconscionable. On August 12, 2023, the parties entered into a plea agreement that contained a sentencing stipulation section. But it didn't have a guidelines range, right? It had every enhancement. It didn't have a guidelines range. It didn't say, therefore, the range is X months to Y months, right? No, that's correct. It did not have a guidelines range. It did have a base offense level, and it had three enhancements, and then it had recommendations for a reduction or an agreement to make a recommendation for a three-level reduction for acceptance of responsibility. But it also reserved the ability to modify this and to add new facts or to make different arguments based on new facts, right? Well, our argument- Did it not? I read it. I thought it said that. The section, it did have a disclaimer, which comes seven pages later in the agreement, which is nowhere near the section called sentencing stipulations. But why does that matter? I guess I'm trying to understand this. I mean, it's treated like a contract. It's in the contract. It was read. It was signed. So why does the fact that it's seven pages later, you make that point again and again in your brief, and I'm not sure why that's relevant. Well, even if you read it, Your Honor, what that language says is that the disclaimer applies unless a stipulation in this agreement explicitly limits the government's discretion. And that's what, by definition, a stipulation does and what it appears to have done. When you have a section called, this is a stipulation which means agreement, that is what that section purports to do. It seems to be the opposite. I mean, unless a stipulation explicitly limits the government's discretion, it goes on to say the government has discretion to argue for a particular guidelines range, particular criminal history category, particular offense level, all those things. Well, I mean, our argument is that is what a stipulation means. And if this disclaimer negates that stipulation, then the term stipulation really loses all meaning. All right, but I mean, that's the language here. It says that this is, I'm looking at page A113, right? Any estimate of the offense level, criminal history category, sentencing guidelines range is preliminary, is not binding on the parties, the probation officer, or the court. Yes, Your Honor. So it's not binding? It appeared, well, then why call it a stipulation, right? A stipulation is agreement to the parties on how something applies, right? Here, the government calls it a stipulation. The section is called sentencing stipulations. What that communicates to a defendant is that's the government understanding of how the guidelines applies. At the time here, when the government offered its plea agreement to Mr. Hodling, it was three years after the offense conduct and two years after Mr. Hodling's indictment. At that point, it had a tremendous amount of information. It had enough information to have a set of stipulated facts in the plea agreement. The enhancements that were then added, and then two days after extending this plea agreement, the government appears in court for Mr. Hodling's plea. And at that plea, it does do that estimate. It does the estimate two days later, calculating what the stipulations that it agreed to ultimately mean in terms of guidelines calculation. So that is what my client was led to understand. That is the information that my client had. And the government at that point was in possession of almost all of the facts. It was certainly in possession of enough of the facts for two of the three enhancements that it later applied. This is not a case. And by the way, the government here references another case that was before this court recently, McDermott, which was the same plea agreement and, in a certain sense, the same argument, that the government breached the plea agreement by including a sentencing stipulation section and then later advocating for additional enhancements. That case actually is factually distinct from this case. And McDermott itself cited Wilson for the proposition that to determine whether there's been a breach, the courts look to what the parties reasonably understood, which is necessarily factually specific to the particular case. But in McDermott, the government raised, and critical to McDermott, the government raised the disputed enhancement during plea negotiations with McDermott. So it wasn't a surprise to McDermott. Further, at the plea hearing in McDermott, the government warned that the estimate could change due to an error. The fact that this enhancement was later applied in McDermott is a factually distinct situation. Here, Mr. Hodling had every reason to view the stipulations as providing a complete picture of the government's view to how the guidelines apply. And it was that understanding that induced him to plead guilty. He should get the benefit of the bargain that the government struck with him. It's not really clear to me, actually, that there's anything in the record to suggest that he was induced that way. All he said is that he may have decided to go to trial, or he may have done something differently had he known this. Don't you need more than that? Well, this is the agreement the government gave him. And this is the agreement that he relied on in making the decision to plead guilty. That is what is before this court. But he's not saying, even now, that had he known that the guidelines were going to be what probation found and what the government ultimately agreed to, he wouldn't have taken this deal. The record doesn't say that, does it? Well, but what the record does have is a guidelines range which is substantially, significantly higher than the enhancements that were calculated in his plea agreement. But he goes in understanding that the court is not bound by any of these stipulations, and the court is certainly free to find a higher guideline range or to go above guidelines. So I'm just trying to understand your argument. It seems to me what you're saying is he wouldn't have taken this plea deal had he known what the government's view of the guidelines was? It's 11 additional points of offense level. It is significantly higher than the plea agreement, than his understanding of the guidelines applied when he was offered the plea. Right? So, I mean, that is the information that the court has. We understand the arithmetic. You're being asked, would he have not pled if he had had your understanding of the agreement? I mean, I can advocate that before you, Your Honor. I don't have a factual piece of the record to point to. I'm trying to get this upset. There's nothing in the record that he would not have entered his plea, right? No, there's nothing in the record. But it is. And isn't that a requirement? I mean, what we have here is. I know what we have, but is that a requirement? I don't think it is, Your Honor. I think that the government should not be permitted to offer an agreement that purports to agree to a certain guidelines range. If he would have pled anyway, what difference? Well, but here we have him. A defendant gives up valuable and important rights when he decides to plead guilty. And he decided to plead guilty based on an agreement that contained a set of terms. Those terms, in practice, didn't bear out to be what he agreed to. That is the unfair surprise. When ultimately he was sentenced, he was facing a guidelines range based on an offense level that was 11 levels higher, right? I mean, this is, you know, that is a tremendous difference. And these are, you know, this is more than about Mr. Hodling here, right? It's about the integrity of plea bargaining in this circuit. And this is not the first time this has come up in the Northern District. This plea agreement was challenged in the McDermott case. It came up before this court recently in Halls. It's here again in this case. Time and time again, defendants are being confused. They're going into pleas having a reasonable understanding that's not bearing out. And the Northern District is persisting with these plea agreements. And this court is best positioned to change this. Is he trying to withdraw his plea? What my client wants now is the benefit of his bargain. What he wants is to go to sentencing before a different district judge with the government adhering to the position that it agreed to in his plea agreement with him. So he's not trying to withdraw his plea? No. Okay. Thank you, Your Honor. Thank you, Your Honors. Good morning, and may it please the court. Joshua Rothenberg for the government. Time and time again, defendants are not trying to withdraw their pleas in the district court after signing this plea agreement when the PSR tells them that these enhancements will be applied. That was true in McDermott. It was true in Halls. It is true here. I don't understand. What is the point of Pimentel if the Northern District now is of the view they don't even need to pick a range and they get to stipulate the things but then, you know, reserve the right to disregard everything they've said in a stipulation? Your Honor, I don't agree with that. Do we just want to do these? Do we just enjoy doing these appeals every time? And so let's build out a plea agreement that invites the parties to come here and make these kinds of arguments for every plea? Your Honor, I don't agree with that characterization. What our plea agreement does is it sets out stipulations that control certain provisions. For example, here, the number of images. Pimentel says you're supposed to give the range, right? In Pimentel, this court asked us to give estimates. It is not a requirement. Pimentel requested. So your view now is Pimentel no longer applies or you just no longer want to comply with it? Your Honor, respectfully, Pimentel never ordered us to give a range. Pimentel asked us to. So you're not doing that anymore? You used to do it, right? I don't know if the Northern District did, Your Honor. I believe it may have. We do provide an estimate when asked by the district court, as we did in this case. But typically within the sentencing agreement itself, or the plea agreement itself, Your Honor, what we agree to are the controlling specific provisions that both the government and the defendant can agree to. We then often, as we did in this case, will estimate and make clear that it's a non-binding estimate at the change of plea hearing. You didn't articulate what were the things you didn't agree on or what were the disputed issues that would be resolved later. You didn't do anything like that, right? We did not. No. But, Your Honor, just to be clear, we did believe that the stipulations in this case did encompass everything. That's just not what we bound ourselves to. In this case, what happened is when probation gave us the PSR, and presumably in the discussions before that, it was clear that probation had a different view, that more increases applied. And on review, we determined that was correct. So that happens. Hobbes says that's not an issue. But ultimately, to the extent that we don't think there was a pimental estimate because we do think a pimental estimate needs to be written, but to the extent there was a pimental estimate, that's not what the defendant here is arguing. In fact, the defendant has waived any pimental argument explicitly in reply. That may be. It seems to me you think it's good sport to just keep doing these. The whole point of pimentel was to avoid these types of appeals. And it seems to me this plea agreement invites them. Your Honor, I don't agree with that. I think the point of pimental was to make sure that the defendant— Oh, so it's just an accident that we've had several from your district in recent months? Your Honor, what's— I mean, you've just been spouting them off. I did, Your Honor. And in all of those— I mean, are there other circuits, other district U.S. Attorney's offices in this circuit using a plea agreement like this one? I can't speak for other offices, Your Honor. I think that what's common in all of these cases is that the defendants are not seeking to withdraw their plea, and they're not making the argument that we are breaching the plea agreement before the district court. Instead, they're waiting. They're seeing what sentence they get, and then they're choosing to appeal or not. Well, that goes to what the standard of review would be, right? It does, and the standard of review is plain error. No, I understand that, but it still means that we've got these appeals. It just seems to me that this is a plea agreement that's inviting this type of practice. Your Honor, we certainly don't mean to invite this type of practice, and we try to tell the defendant—this is page 115 of the record— unless the stipulation in this agreement explicitly limits the government's discretion with respect to its recommendation of sentencing, this agreement does not prevent the government from urging the sentencing court to find that a particular offense level or guidelines range applies. What we're trying to do is be able to stipulate with the defendant on what we can agree on and take those issues completely out, right? At that point, we can't disagree with one of our stipulations. We couldn't, for instance, have said there were more images in this case than what we stipulated to. The defendant couldn't have said there were less. So that is no longer an issue for sentencing. The parties have made an agreement, but we are trying to leave it open in case, as in this case, probation discovers something that we didn't. By the way, as in this case as well, in case the Sentencing Commission amends the guidelines, the defendant requested a lower criminal history, and we didn't object to that because our understanding was that he was fully allowed to do that. The Sentencing Commission had changed the guidelines from- So were these new facts that probation uncovered that were unavailable to the government at the time of the plea agreement being negotiated? Your Honor, with regard to two of the enhancements, definitely no. With regard to the pattern enhancements, a little complicated. We learned some facts during the negotiations but don't seem to have recognized the potential sentencing significance of those facts. So for the two you concede, what, so now you're just saying you guys blew it? Yes, we overlooked those. And in Hobbes, this Court recognized, Hobbes is a parental case, but in Hobbes this Court recognized that sometimes in good faith the government will simply overlook applicable provisions of the guidelines. That's what happened here. Obviously it's unfortunate, but we didn't agree with the defendant. And that's with regard to all the enhancements? I believe that's with regard to all the enhancements. Yes, Your Honor, all of the pattern enhancements, there's some indication in the PSR we only learned those facts during negotiations, that we'd already sent the agreement, and then we learned those facts. To be clear, we were preparing for trial as well. This defendant was set to go to trial the day after he ultimately pled guilty, three days after he signed the plea agreement, so we were getting a superseding indictment. We found a new witness we were trying to bring up. We were dealing with pretrial motions, and we were trying to create the plea agreement all at once. Do you sometimes agree to a specific guideline range? Your Honor, I've seen 11 C1Cs out of our office. I'm not sure if I've seen us stipulating to a specific guideline range, but that is, of course, something a defendant could ask for and determine the case. So what we're seeing is typical? Yes. But again, it is what it appears. It's what the McDermott Court recognized was a series of agreements on the application of specific provisions. And regardless, Your Honor, the fact that a panel of this Court found just last December that our interpretation of the plea agreement is correct and the defendant's is wrong means that there is certainly no plain error here. I'm happy to take other questions on the plea agreement. Otherwise, I'll turn to the sentencing issues. I think Wagner, Dano, and Rainford make quite clear the district court made adequate findings when it adopted the PSR. The obstruction adjustment was properly applied based on the destruction of the flash drive. Whether or not you conceive of probation's investigation as the same investigation, which case it happened during the investigation, or a different one, in which case it's an obstruction to the same conduct, we believe Mr. Hotaling's prior appeal controls the application of the sadism enhancement here because had the 11-year-old been placed in this position, she would have experienced pain. So that being said, all three of those arguments are also on plain error because none of those three arguments were made to the district court, and so certainly any error would not be plain. I'd be happy to answer any other questions the court may have. I'll otherwise rest on my briefs for the remaining issues in this case. I guess it's also the case that Judge Suttego made it clear that guidelines aside, he was coming out in the same place. He did, Your Honor, so any error would be harmless. By the way, I should say the same would be true with the plea agreement. The defendant has its plain error, and the defendant, I think, here today has essentially waived the claim that anything in the record would suffice to meet the burden on the substantial rights prong. Thank you, Your Honors. I just wanted to turn back to Judge Sullivan to your point about the Pimentel, to what Pimentel requires, and the government is correct that we're not, we don't dispute that the plea agreement did not provide, we're not arguing that this was a Pimentel estimate, but our argument here, in essence, is that the government's claiming that a stipulation in a plea agreement provides less protection than a Pimentel estimate. Now, Pimentel, when the government gives a defendant a Pimentel estimate, a defendant isn't giving up a lot of valuable rights, right? They're pleading guilty to an indictment, but they're preserving their, you know, many other rights, right, that we give up in plea agreements, notably a right to appeal, among other rights. Now, that's here the government isn't extending a plea agreement, requiring a defendant to give up those rights, and providing less protections. Now, that's not how plea agreements are supposed to work. The government here holds all the power, and to bargain this way is unconscionable, to say we... I mean, if the government makes a mistake, I mean, we have a lot of cases where the government has miscalculated the guidelines, and we don't call that a breach of the plea agreement, and we don't allow people to get their pleas back, right? Yeah, but the government... There's no sign here of bad faith, is there? No, nor am I alleging bad faith, but what I am arguing here, really, is laziness, right? Well, laziness may be laziness, but not bad faith, but what you're really arguing is sort of strict liability, it seems to me, and I don't see any basis for that in the case law. So where do you see that? Well, what I'm arguing is that this is an agreement that has set a reasonable understanding, and that might create a reasonable understanding that is breached. The government here is really reserving a way to add enhancements later, but it's not a way that's clear to defendants. It's a way in which... But the way it should work out, then, is that the defendant can say, I want my plea back, and then can submit a declaration or something to show that he wouldn't have taken this but for the misrepresentations, and then the district court can flesh all that out, and then we'd have something to go off of. But you're not even saying... In fact, you wait until your reply brief to say, maybe he wouldn't have taken his plea had he known about this guideline's mistake. That doesn't get you even close to the kind of relief that you want, it seems to me. Well, I mean, my client wanted the agreement that he reasonably believed that he had bargained for. The northern district is insisting on these plea agreements, despite this case, despite halls, despite, you know... And other districts do not do it this way, right? Other districts, the government calculates, stipulates to a guidelines range, and then they're faced with a situation where they go to sentence and they say, your honors, we will stand by our agreement, right? I mean, why plead guilty in the northern district of New York when all you're agreeing is to a set of data, pursuant to a plea agreement, when all you're getting is a set of data points that don't give you a full picture of the government's understanding or understanding of what the government is going to be arguing for? It is a fundamentally unfair bargain that the northern district of New York is asking defendants to strike. And I will also say that I understand that the court here said that I would have given this sentence regardless, right? And the reason... What I say to that is there's a reason that these cases, when they are remanded, they are remanded to different courts. Because courts can't unsee the influence, the government's influence. You know, this court is held in Wilson, in remanding this case to a different court. That's because that influence is difficult to erase. Had the government... I think this would have been the exact same situation if the government had done here what you're saying they do in other districts, which is, yeah, these other guidelines enhancement that the probation office came up with apply, but we're still standing by the agreement which has the lower range. And if all that had happened and the judge had said, great, I'm adopting the probation guideline range, I'm opposing that at the high end, and even if probation is wrong, I would come out in the exact same place, there would be no basis to challenge that sentence, right? What I'm saying is that had the government advocated for the stipulated range, we can't know what would have happened. The court is saying that with the information, with the advocacy it has, right? But that's not... The court is saying, basically, speaking to a situation that does not exist, and if the government had been held... And even if that had existed, my client would have gotten the benefit of his bargain, right? If the government... What my client wanted is for the government to do what it had believed the government had agreed to do. But the language of the agreement shows that he got exactly the benefit of his bargain because the government didn't make any promises. I mean, it seems to me what I'm objecting to is that this is a waste of our time to have a plea agreement that invites these kinds of appeals routinely, and so maybe it's worth taking a look at. But I don't... It's not clear to me what is your basis for saying that your client either gets his plea back or he gets a new judge to sentence him, who might, by the way, go higher on this conduct. That's true. Be careful what you ask for. Well, I ask your honors to... I know your honors have reviewed this plea agreement. I ask you to look at it again. It's 22 pages long. It has a numbered set of paragraphs followed by a set of lettered paragraphs, which frankly, you know, because they have an entirely different system of order, feel like, look like they are grafted on from an entirely separate agreement. That might not be true, but your client has never said he was confused by that, has never said he wanted his plea back, has never said that this induced him to take a plea that he wouldn't otherwise have taken. He's never said that. That's true, your honors. So you're saying you're giving us this parade of horribles that don't seem to apply here because your client hasn't said it. You're asking us to make policy going forward for the Northern District of New York. What I'm saying is that this agreement was unclear and my client's reasonable... To whom? To my client. My client's reasonable understanding and the clear meaning of this agreement when you use the word sentencing stipulations is an agreement, right? And that what comes later does not change that. And if you read the language of the disclaimer, even if you read it next to the plain language of the sentencing stipulations section, it is not clear that this is one of those situations which the disclaimer contemplates because the sentencing stipulations section appears to be an agreement between the parties. The disclaimer is for situations where the government is not binding itself to an agreement. Didn't you tell us on your opening argument not only did he fail to say certain things, but didn't you represent that he, in fact, does not want to withdraw his plea? What my client is asking for is for a remand and a resentencing with the government held to its end of the bargain. Okay, that's what he wants. Is it clear, as you said earlier, he does not want to withdraw his plea? That's what you told us originally. Is that still the case? Yes, the remedy that we are asking for. The remedy my client is asking for. I'm trying to get clear what you're not asking for. And isn't it so you are not asking that he be allowed to withdraw his plea? Well, that's an alternative remedy. I don't want to foreclose remedies for my client. On your first argument, you had no trouble answering that question. You said, no, he does not want to withdraw his plea. Yes, Your Honor. I did say that, Judge Newman. Is that still the case? Thinking better of it standing here, what I would say is that those are two remedies that the court has to address breaches of plea agreements. If the court is inclined to apply that remedy over the remedy of holding the government to its bargain, then my client would accept that remedy. Well, we're not going to apply remedies that aren't being sought, particularly when they open up new hazards for your client. We're not going to force him to withdraw his plea and face a higher standard, are we? You don't want that. No, Your Honor. I don't. So can't we put withdrawing the plea as completely out of this case? Would withdrawing the plea get us out of this case? Yes, it would, Your Honor. And if that is a remedy, if Your Honor wants me to secure . . . So all you want is resentencing before another judge? I mean, that is our preferred remedy. My client agreed to this plea agreement. It's your preferred. Is it your only remedy that you're seeking? If Your Honors seek to find a remedy in this case . . . No, no, no, never mind what we think. You're here arguing on his behalf. So the question is, what does he want from us? And it sounded to me like all he wanted was resentencing before a different judge. Your Honor, to be frank, I'm uncomfortable . . . What I would like to do then, Your Honors, is ask my client if that is the remedy that he would accept. If that's what you're asking me, if that's what you're proposing as a solution for this case. Well, we will take that under advisement and return to the question if we need to in resolving the appeal. But we understand your position is your preferred remedy. What you're first seeking, you want us to consider whether he would be entitled to a resentencing before a different judge on these facts. Yes, Your Honor. Thank you. Thank you both, and we will take the matter under advisement. Thank you.